IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | CRIMINAL FILE NO. |
| v. | 1:15-CR-45-MHC |
| KARL TOUSET, | Magistrate Judge Gerrilyn G. Brill |
| Defendant. | |

## REPORT AND RECOMMENDATION

Defendant is charged with knowingly receiving child pornography, knowingly transporting child pornography, and possession of a computer and computer storage device containing child pornography. (Doc. 11). The following motions remain pending on the docket of this case: Motion Reserving the Right to File Additional Motions (Doc. 20); Motion to Reveal the Deal (Doc. 21); Motion to Suppress Search and Seizure of Device(s) (Doc. 22); Motion to Suppress Search of Defendant's Residence with a Warrant (Doc. 23); and Motion to Suppress Statements and the Fruits Thereof. (Doc. 24).

Defendant's Motion Reserving the Right to File Additional Motions (Doc. 20) is **DENIED**. However, if Defendant has good cause to file additional motions, he may apply to the court to do so. I believe that the parties have worked out a

resolution to Defendant's "Motion to Reveal the Deal". (Doc. 21).  Nevertheless, it is **GRANTED IN PART in accordance with Rule 16.**  An evidentiary hearing was held on September 30, 2015, on the Motions to Suppress.  (Doc. 38).  All transcript references are to the transcript of that hearing.  For reasons discussed below, I **RECOMMEND** that all Motions to Suppress be **DENIED**.

I.     FACTS

In September 2014, Xoom, a money transmitter company, identified a group of persons who it suspected were involved in trading or producing child pornography.  (Doc. 38, p. 27).  Xoom's suspicions were based on frequent transfers of small amounts of money to countries associated with sex tourism and child pornography, including the Philippines, Thailand, and the Dominican Republic.  (Id., pp. 28-29).  Special Agent Dianna Ford with the Department of Homeland Security Immigration and Customs Enforcement, Homeland Security Investigations (HSI) testified that based on her training and experience, these countries are involved in the child pornography trade.  SA Ford has been with HSI for eight years and has received training on child exploitation and child pornography cases.  She has been investigating those types of cases for four years.  (Id. pp. 25-26, 29).

2

In September 2014, Xoom notified the National Center for Missing and Exploited Children (NCMEC) and Yahoo! of its suspicions. (Id., pp. 27, 31). Xoom notified Yahoo! as well, because individuals signed up for Xoom's service were using an e-mail address provided by Yahoo! (Id., pp. 29-30). Yahoo! began its own investigation based on the information from Xoom. (Id., p. 31).

Yahoo! identified the e-mail account "ilovyousomuch0820@yahoo.com" as one which had distributed, received, or possessed a file containing child pornography. (Id., p. 32). The customer who created that email account gave Yahoo! a phone number in the Philippines to associate with this account. (Id., p. 32). In September or early October 2014, Yahoo! made "cyber tips" concerning its investigation to NCMEC, which in turn notified the Cyber Crime Center, a branch of Homeland Security. (Id., p. 33).

The Cyber Crime Center then sent a summons to Western Union, Xoom, and other money transmitters for data concerning anyone who was associated with the e-mail account "ilovyousomuch0820@yahoo.com," including anyone who had sent money to an account associated with that e-mail account. (Id., p. 34). In response, Western Union found that the telephone number that was associated with the Yahoo! e-mail account was also linked to a Western Union account. Western Union

3

identified the Defendant, Karl Touset, with an address at a post office box in Marietta, Georgia, as having sent money to the Western Union account that was associated with the phone number that was, in turn, associated with the Yahoo! e-mail address. (Id.). Prior to December 21, 2014, government investigators determined that Defendant had made three payments through Western Union to the entity with the telephone number associated by Yahoo! with "ilovyousomuch0820@yahoo.com." (Id., p. 61). The payments were: $35 on March 31, 2013; $35 in April 2013; and $37 in July 2013. (Id., pp. 61-62).

Based on the above information, HSI placed a "look-out" on Defendant, such that if he entered the United States from outside the United States his luggage and electronic media would be searched at the border. (Id., p. 37).

On December 21, 2014, Defendant entered the United States from Europe. (Id., p. 38). Derek Escobar, a Customs and Border Protection (CPB) Officer was on duty at the Atlanta airport at the secondary inspection area when Defendant entered the United States. (Id., pp. 10, 37-38). Officer Escobar received information that Defendant was under investigation for possible child pornography possession. (Id., p. 8). Officer Escobar was instructed to do a thorough inspection of any baggage and electronic media that Defendant was attempting to bring into the United States. (Id.).

4

Defendant had in his possession two iPhones, a camera, two laptops, two external hard drives, and two tablets. Officer Escobar inspected the iPhones and camera, did not find any child pornography on them, and gave them back to Defendant. (Id., pp. 11-12).

Officer Escobar did not have the knowledge, equipment, or training in computer forensic analysis to thoroughly check the laptops and hard drives. (Id., pp. 9, 22). Therefore, he kept these six items and did not return them to Defendant. (Id., p. 12). Officer Escobar called his supervisor and received instructions to retain these items. (Id.). Defendant was not personally detained and was free to leave after about thirty minutes. (Id., p. 13).

On January 6, 2015, government investigators found child pornography on the laptop computer that had been taken from Defendant at the airport. (Id., p. 65). At that point, government agents considered the devices to be seized. (Id., pp. 65-66).

On January 28, 2015, SA Ford applied for and obtained a federal search warrant for Defendant's residence. (Doc. 29-1). The affidavit in support of the search warrant relied on the evidence of child pornography found on the electronic devices that had been taken from Defendant at the airport and later searched without a warrant. (Id., p. 12). Defendant was arrested on an arrest warrant on the day of the

home search. (Doc. 38, p. 68). He was informed of and waived his Miranda rights and made statements to law enforcement officers. (Id.; Gov. Exhs. 2, 3).

Defendant moves to suppress the evidence from the electronic devices taken from him at the airport and the evidence seized from his home during the execution of the search warrant. Defendant does not argue in his post-hearing brief that his statements were custodial or that they were not made after a knowing waiver of his rights. Therefore, I will assume that his motion to suppress his statements relies on the theory that his statements were the fruits of the allegedly unlawful search of the electronic devices taken from him at the airport. (Doc. 39, p. 8, citing Wong Sun v. United States, 371 U. S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

## II. DISCUSSION

There is no dispute that the search of Defendant's electronic devices on December 21, 2014, began as a border search. In United States v. Cotterman, 709 F.3d 952, 957 (9th Cir.2013), the Ninth Circuit held that reasonable suspicion was required before investigators could undertake the forensic examination of a computer hard drive as part of a search that began as a cursory review at the border. To date, the Ninth Circuit is the only circuit that has decided the issue of what if any level of suspicion is required for a full forensic search of electronic devices brought in at the

border.  The parties agree, consistently with the holding in Cotterman, that the government agents needed reasonable suspicion of criminal activity in order to lawfully detain for further analysis and search Defendant's electronic devices.  (Doc. 41, p. 10; Doc. 39, p. 10).  Thus, I will assume without deciding that reasonable suspicion was needed for the search of Defendant's electronic devices.

Law enforcement officers have reasonable suspicion when they can point to "specific and articulable facts," which, when considered together with the rational inferences that can be drawn from those facts, indicate that criminal activity "may be afoot."  Terry v. Ohio, 392 U.S. 1, 21, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).  The court's determination must be based on the totality of circumstances.  See United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002);  see also United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (recognizing that law enforcement agents will draw upon their training and experience to piece together subtle clues that may seem innocent to others).

In Cotterman, the defendant was suspected of child-sex tourism.  He was flagged for inspection at the border based on his frequent travels in and out of the country; a 15-year old conviction for child pornography (although the officer was mistaken, as Cotterman's prior conviction was for child molestation); the fact that he

7

was returning from Mexico, a known destination for sex tourism; and possession of a variety of electronic devices (two laptops and three digital cameras).  The Ninth Circuit found that customs officials had reasonable suspicion for the search of Cotterman's electronic devices.  Cotterman, 709 F.3d at 970 (stating "we credit the agents' observations and experience in acting upon significant myriad factors that support reasonable suspicion.  It is not our province to nitpick the factors in isolation but instead to view them in the totality of the circumstances.")

   Here, although Touset had no prior conviction, and there was no recent travel outside the United States, there were stronger articulable bases for suspicion of possession of child pornography than in Cotterman.  The collective information of the officers allowed the reasonable inference that Touset had made three small payments through Western Union to an entity in the Phillippines, a country known for child exploitation, which entity used an email address that had previously received or sent child pornography.  While Touset's most recent payment was fifteen months in the past, given the nature of the suspected offense (possession of child pornography on an electronic device), the suspected conduct was not so stale so as to dispel reasonable suspicion.  Files on a computer are less likely than other types of contraband to disappear over time and can often be recovered even if they are

8

deleted. See United States v. Sarras, 575 F.3d 1191, 1197, 1203 (11th Cir. 2009) (describing how forensic investigators recovered images of child pornography from a laptop hard drive that were previously deleted).  In sum, I find that there was reasonable suspicion for the search.

Touset relies heavily on United States v. Kim, 103 F. Supp. 3d 32 (2015 D.D.C.).  In Kim, the defendant, charged with violating export control laws, moved to suppress evidence discovered during a warrantless search of his laptop computer that was seized as he was departing from the United States for his home country of South Korea.  The court found that the national security concerns were "somewhat attenuated" when a passenger is leaving the country. 103 F. Supp. 3d at 57.  As the instant case involves a person entering, rather than departing, the country, Kim is not particularly relevant.  In any event, to the extent Kim is relevant, I do not find it to be persuasive authority on whether there was sufficient reasonable suspicion to search Touset's electronic devices for evidence of child pornography.

I agree with the Defendant that if the government had seized the Defendant's electronic devices unlawfully, then it cannot rely on the good faith doctrine of United States v. Leon, 468 U.S. 897, 925, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), to claim that the search of those items was lawful. See United States v. McGough, 412 F.3d

1232, 1239 (11th Cir. 2005). However, as discussed above, I find that law enforcement had a reasonable suspicion justifying the seizure and search of Defendant's electronic devices, and, therefore, the subsequently obtained evidence was not tainted by an illegal search.

### III.  CONCLUSION

For reasons discussed above, I **RECOMMEND** that Defendant's Motion to Suppress Search and Seizure of Device(s) (Doc. 22); Motion to Suppress Search of Defendant's Residence with a Warrant (Doc. 23); and Motion to Suppress Statements and the Fruits Thereof (Doc. 24) be **DENIED**.

I order that Defendant's  Motion Reserving the Right to File Additional Motions (Doc. 20) is **DENIED**. However, If  Defendant has good cause to file additional motions, he may apply to the court to do so.  Defendant's Motion to Reveal the Deal is **GRANTED IN PART in accordance with Rule 16.**

There are no pending matters before me. It is **ORDERED AND ADJUDGED** that this action be declared **READY FOR TRIAL**.

**IT IS SO RECOMMENDED** this 6th day of January, 2016.

_Gerrilyn G. Brill_
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE