IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL ACTION FILE |
| KARL TOUSET, | NO. 1:15-CR-45-MHC |
| Defendant. | |

## ORDER

This action comes before the Court on the Final Report and Recommendation ("R&R") of the Magistrate Judge [Doc. 45] that Defendant's Motion to Suppress Search and Seizure of Device(s) [Doc. 22], Defendant's Motion to Suppress Search of Defendant's Residence with a Warrant [Doc. 23], and Defendant's Motion to Suppress Statements and the Fruits thereof [Doc. 24] be denied. The Order for Service of the R&R [Doc. 25] provided notice that, in accordance with 28 U.S.C. § 636(b)(1), the parties were authorized to file objections within fourteen (14) days of the receipt of that Order. Within the required time period, Defendant filed his objections to the R&R [Doc. 51] ("Def.'s Objs.").

I.   BACKGROUND

In September 2014, Xoom, a money transmitter company, identified a group of persons suspected of trading or producing child pornography based on frequent transfers of small amounts of money to countries associated with sex tourism and child pornography, including the Philippines, Thailand, and the Dominican Republic. Tr. of Evidentiary Proceedings Held on September 30, 2015 [Doc. 38] ("Tr.") at 27-29. Xoom notified the National Center for Missing and Exploited Children ("NCMEC") and Yahoo! of its suspicions, the latter because individuals signed up for Xoom's service were using an e-mail address provided by Yahoo! Id. at 27, 29-31. Yahoo! began its own investigation based on the information received from Xoom, and identified the e-mail account "ilovyousomuch0820@yahoo.com" as one that had distributed, received, or possessed a file containing child pornography. Id. at 31-32. The customer who created that account gave Yahoo! a phone number in the Philippines associated with this account. Id. at 32.

In September or early October 2014, Yahoo! made "cyber tips" concerning its investigation to NCMEC, which in turn notified the Cyber Crime Center, a branch of Homeland Security. Id. at 33. In response to a summons from the Cyber Crime Center, Western Union found that the telephone number associated with the

Yahoo! e-mail account was linked to a Western Union account, and identified Defendant with an address at a post office box in Marietta, Georgia, as having sent money to the relevant Western Union account. Id. at 34-35. Prior to December 21, 2014, government investigators determined that Defendant had made three payments through Western Union to the entity with the telephone number: $35 on March 31, 2013; $35 in April 2013; and $37 in July 2013. Id. at 61-62.

Based upon this knowledge, Homeland Security Investigations ("HSI") placed a look-out on Defendant so that, if he re-entered the United States from abroad, his luggage and electronic media would be searched at the border. Id. at 37. On December 21, 2014, Defendant returned to the United States from Europe. Id. at 10, 38. Officer Derek Escobar of Customs and Border Protection ("CBP" or "Customs"), on duty at the Atlanta airport, received information that Defendant was under investigation for possible possession of child pornography, and was instructed to do a thorough inspection of baggage and electronic media Defendant was attempting to bring into the country. Id. at 8. Defendant's electronic media consisted of two iPhones, a camera, two laptops, two external hard drives, and two tablets; Officer Escobar inspected the iPhones and camera and returned them to Defendant after finding no child pornography on them. Id. at 11-12.

However, Officer Escobar did not have the knowledge, equipment, or training to thoroughly inspect the laptops and hard drives; he called his supervisor and was instructed to retain these items. Id. at 9, 12, 22. Defendant was not personally detained, and was free to leave after roughly thirty minutes. Id. at 13.

On January 6, 2015, government investigators found child pornography on Defendant's laptop computer that was retained at the airport; at that point, the agents considered the items to be seized. Id. at 65-66. On January 28, 2015, HIS Special Agent Dianna Ford obtained and executed a federal search warrant for Defendant's residence based on the evidence of child pornography found on the electronic devices taken from Defendant at the airport. Id. at 41; Appl. and Aff. for Search Warrant [Doc. 29-1]. On the day of the home search, Defendant was arrested on an arrest warrant; he was informed of and waived his Miranda rights and made statements to law enforcement officers. Tr. at 47-49, 68.

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing a Magistrate Judge's R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). "Parties filing objections to a magistrate's report and recommendation must

specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)) (internal quotation marks omitted). If there are no specific objections to factual findings made by the Magistrate Judge, there is no requirement that those findings be reviewed *de novo*. Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993). Absent objection, the district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]," 28 U.S.C. § 636(b)(1)(C), and may accept the recommendation if it is not clearly erroneous or contrary to the law. FED. R. CRIM. P. 59. In accordance with 28 U.S.C. § 636(b)(1) and Rule 59 of the Federal Rules of Criminal Procedure, the Court has conducted a *de novo* review of those portions of the R&R to which the parties object and has reviewed the remainder of the R&R for plain error. See United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

### B.   Border Searches

The Fourth Amendment provides that "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be

searched, and the persons or things to be seized." U.S. CONST. amend. IV. The Fourth Amendment protects citizens from random government intrusion on their privacy.

One significant exception to the Fourth Amendment's restrictions occurs at the country's borders. Routine searches of travelers and their belongings at an international border "are not subject to any requirement of reasonable suspicion, probable cause or warrant. . . ." United States v. Montoya de Hernandez, 473 U.S. 531, 538 (1985). Customs agents have been given broad authority to search vehicles and persons upon their entry into the United States, including their personal effects, to prevent unlawful merchandise from being brought into the United States. United States v. Flores-Montano, 541 U.S. 149, 152 (2004) ("The Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border."); United States v. Alfaro-Moncada, 607 F.3d 720, 728 (11th Cir. 2010) ("At the border, an individual has a lesser expectation of privacy, the government has a greater interest in searching, and the balance between the interests of the government and the privacy right of the individual is struck more favorably to the government."). An airport is considered the

functional equivalent of a border. United States v. Richards, 638 F.2d 765, 771 (5th Cir. 1981).[1]

Customs has statutory authority to conduct "border searches" to search and examine any vehicle or person for merchandise that might be introduced into the United States in any manner contrary to law. 19 U.S.C. §§ 482, 1581. This authority includes the examination of potentially obscene material. 19 U.S.C. § 1305. "Merchandise" is not to be delivered from the custody of Customs until it has been inspected, appraised, or examined, and found to be in compliance with the laws of the United States. 19 U.S.C. § 1499(a)(1).

Although probable cause is not required to conduct a search at the border, the Fourth Amendment does include a reasonableness requirement, which considers the nature and scope of the search. Montoya de Hernandez, 473 U.S. at 538 (holding that searches or seizures that are especially intrusive, such as detention of suspected alimentary canal smugglers, require at least reasonable suspicion to search the canal). When considering a border search of a computer, the Ninth Circuit has held that agents must have reasonable suspicion to perform a computer forensics analysis of a passenger's electronic devices. United States v.

---

[1] In Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit prior to October 1, 1981.

Cotterman, 709 F.3d 952, 968 (9th Cir. 2013). Reasonable suspicion is defined as "a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981). Although the Eleventh Circuit has yet to address this issue, the Court finds this standard to be appropriate, and that the circumstances here were such that the officers did have reasonable suspicion to conduct a forensic search of Defendant's devices.

## III. DISCUSSION

### A. Reasonable Suspicion

Defendant first objects to the R&R by contending that the information the government possessed at the time Defendant entered the country was insufficient to establish a reasonable suspicion of criminal activity. Def.'s Objs. at 9-14. The Magistrate Judge found a reasonable suspicion for the detainment and forensic search of Defendant's property because "[t]he collective information of the officers allowed the reasonable inference that Touset had made three small payments through Western Union to an entity in the Philippines, a country known for child exploitation, which entity used an email address that had previously received or sent child pornography." R&R at 8. However, Defendant contends that "[n]othing in that factual predicate offers a particularized reason to believe that Defendant was

engaged in criminal activity" at the time he entered the country. Def.'s Objs. at 9. He asserts that "the foundation of the Magistrate's finding of a reasonable suspicion rests exclusively on the *unsupported assumption* that the entity receiving Defendant's payments *is* the same entity that used an email address which contained a single image of suspected child pornography" and that "there is *no evidence* known to the government that Defendant ever communicated electronically, as a sender or a recipient, with the suspected email address whatsoever." Id. at 12 (record citations omitted) (emphasis in original).

Defendant states that the "reasonable suspicion standard only relates to *ongoing or imminent* crime." Id. at 13 (emphasis in original). He contends that, here, the information regarding the payments is not related to his border crossing and not indicative of ongoing or imminent criminal activity. Id. (citing United States v. McGinnis, 247 F. App'x 589, 594 (6th Cir. 2007)). Further, he states, at the time, there was no evidence that he had been involved in criminal activity or had been involved with child pornography. Id. at 13-14.

The Court concludes there was sufficient information to constitute reasonable suspicion. See United States v. Furukawa, No. 06-145(DSD/AJB), 2006 WL 3330726, at *5 (D. Minn. Nov. 16, 2006) (finding reasonable suspicion existed where an alert indicated that "defendant may have purchased access to a

9

[sic] Internet site that contained child pornography"). Reasonable suspicion is a relatively low standard. Montoya de Hernandez, 473 U.S. at 542. "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." Navarette v. California, 134 S. Ct. 1683, 1687 (2014). Based on the information discussed, the Cyber Crime Center issued a look-out for the defendant should he come into the United States at a port of entry, and it requested that customs officers detain any electronic devices that he was bringing into the country. The defendant's laptops, hard drives, and tablets were detained based on this reasonable suspicion of criminal activity. As another court has held, "persons who deal in child pornography tend to carry at least some of it with them when they travel," leading to the logical inference that Defendant would have had some child pornography in his possession at the border. See United States v. Verma, No. H-08-699-1, 2010 WL 1427261, at *4 (S.D. Tex. Apr. 8, 2010).

Defendant urges the Court to find a lack of reasonable suspicion based, in part, on the contention that his recent border crossing was not related to any suspicion of criminal activity. Def.'s Objs. at 13. However, other courts have upheld border searches requiring reasonable suspicion even when the relevant

international travel was not clearly related to the suspicion of criminal activity. See, e.g., United States v. Saboonchi, 990 F. Supp. 2d 536, 571 (D. Md. 2014) (finding reasonable suspicion existed based on investigation of defendant's potential export violations related to the Islamic Republic of Iran to conduct forensic search of his devices after his return to Buffalo, New York, from a day trip to the Canadian side of Niagara Falls). As one Magistrate Judge has concluded, "[t]here is . . . little doubt that preventing the flow of contraband across the United States' borders, which would include illicit images of child pornography, falls within the purview of customs enforcement." United States v. Smasal, No. 15-85-JRT/BRT, 2015 WL 4622246, at *10 (D. Minn. June 19, 2015) (recommending denial of motion to suppress) (citing Flores-Montano, 541 U.S. at 152-53; United States v. Alfonso, 759 F.2d 728, 735 (9th Cir. 1985)). "That interdiction of contraband can serve both customs and law enforcement purposes does not negate the validity of a search at the border or its functional equivalent." Id. (citing Flores-Montano, 541 U.S. at 150).

Further, to the extent that Defendant suggests that the search was motivated by general law enforcement concerns, rather than customs enforcement, the Supreme Court has held that "concerns about improper motives and pretext do not justify subjective inquiries" in the Fourth Amendment context, and that "[e]fficient

11

and evenhanded application of the law demands that we look to whether the [defendant's] arrest is objectively justified, rather than to the motive of the arresting officer." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2082-83 (2011); see also Whren v. United States, 517 U.S. 806, 813 (1996) ("[W]e have been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers. . . ."). The Court finds that the search was justified by reasonable suspicion of criminal activity by Defendant. Defendant's objection is **OVERRULED**.

### B.  Recent Case Law

Defendant next contends that the R&R misinterprets recent case law. Def.'s Objs. at 14-23. He relies primarily on United States v. Kim, 103 F. Supp. 3d 32 (D.D.C. 2015), and United States v. Laich, No. 08-20089, 2010 WL 259041 (E.D. Mich. Jan. 20, 2010) (finding no reasonable suspicion for extended border search upon entry in child pornography case). The R&R concluded that Kim was not applicable because it involved a person leaving the country, where the national security concerns were "somewhat attenuated." R&R at 9 (quoting 103 F. Supp. 3d at 57). The R&R also concluded that Kim was not "persuasive authority on whether there was sufficient reasonable suspicion to search [Defendant's] electronic devices for evidence of child pornography." Id.

The Court agrees. Not only does <u>Kim</u> involve a defendant exiting the country, thereby attenuating national security concerns, it did not involve child pornography. <u>Laich</u> also is distinguishable in that it involved an extended border search. As the Ninth Circuit has clarified, the forensic search of a computer, even if transported from its place of original detention at the border, is not transformed into an extended border search. See <u>Cotterman</u>, 709 F.3d at 961-62. The Court agrees with the R&R's interpretation of case law; therefore, Defendant's objection is **OVERRULED**.

### C.  Staleness Doctrine

Defendant further contends that the R&R erred in the way it applied the staleness doctrine. Def.'s Objs. at 24-28. The R&R concluded that, although Defendant's most recent payment made through Western Union to the Philippines was seventeen months[2] prior to his detention, that conduct was "not so stale so as to dispel reasonable suspicion" given the nature of the suspected offense (possession of child pornography on an electronic device) because "[f]iles on a computer are less likely than other types of contraband to disappear over time and can often be recovered even if they are deleted." R&R at 8-9 (citing <u>United States</u>

---

[2] The R&R actually stated the most recent payment was fifteen months in the past. R&R at 8.

v. Sarras, 575 F.3d 1191, 1197, 1203 (11th Cir. 2009)). Defendant contends that the staleness exception requires that the target of the investigation actually have possessed child pornography such that it is reasonable to believe he could have retained the images. Def.'s Objs. at 24. He asserts that cases finding the staleness exception to apply involve situations in which "the suspect actually demonstrated criminal proclivities towards children; the possession of child pornography in the past; or, the prior determination or admission that the target had been found to be a 'pedophile'" which he contends is not the situation in the instant case. Id. at 26. However, Defendant also contends that his payments should be considered stale even in a child pornography case. Id. at 27.

In response, the Government states that staleness is based not on whether "additional evidence shows that the suspect has some type of prior involvement in child exploitation" but on "whether there is reason to believe that the items seized would reveal evidence of a crime." Govt.'s Resp. at 2-3. The Court agrees with the Government. Courts have held that, "because the crime [of child pornography] is generally carried out in the secrecy of the home and over a long period, the same time limitations that have been applied to more fleeting crimes do not control the staleness inquiry for child pornography." United States v. Frechette, 583 F.3d 374, 378 (6th Cir. 2009) (upholding search warrant based on sixteen-month-old

information about suspect's subscription to child pornography website); see also United States v. Potts, 586 F.3d 823, 830 (10th Cir. 2009); United States v. Lacy, 119 F.3d 742, 745-46 (9th Cir. 1997).[3] As discussed, the Court has found reasonable suspicion that Defendant was involved with child pornography existed to perform a forensic search of Defendant's electronic devices. Because of the unique circumstances involving child pornography, the evidence was not stale. Defendant's objection is **OVERRULED**.

### D.      Totality of the Circumstances

Defendant objects to the R&R by contending that, although the Magistrate Judge correctly stated that the determination of reasonable suspicion must be based on the totality of the circumstances, she failed to weigh factors against reasonable suspicion. Def.'s Objs. at 28-31. He asserts that the detention and search of his electronic devices exceeded the scope of the officers' authority, and that their authorization to "search through his electronic media" failed to include his laptop. Id. at 29. The Court finds that this argument is without merit. Defendant's

---

[3] In reply, Defendant argues with the Government's statement that staleness "does not apply when examining computer evidence of the sexual exploitation of children." Def.'s Reply at 2 (quoting Govt.'s Resp. at 5). Defendant states the issue of staleness must be based on the unique facts of the case. Id. at 2-3. The Court agrees that staleness requires an inquiry into the facts of the case, but finds that the facts of this case warrant a finding that the information is not stale.

contention that "Agent Ford exceeded the unambiguous authority of the flag by ordering Escobar to detain and eventually seize Defendant's electronic devices for offsite forensic analysis" (id.) is belied by the facts. As the Court has concluded, there was reasonable suspicion for the forensic search.

Defendant also contends that the R&R "completely fails to take Defendant's privacy rights into consideration." Id. at 30. The Court disagrees. Although a forensic search of a computer is undoubtedly more intrusive than a cursory search of a person's baggage, the requirement of reasonable suspicion for such searches does take the person's privacy rights into consideration. Defendant's objection is **OVERRULED**.

### E.     Fruits of Illegal Search

Finally, Defendant objects to the R&R by his contention that, "[a]s fruits of the original illegal search of Defendant's electronic devices seized at the border, all subsequently obtained evidence, including the items seized from his home and any statements made by Defendant, must be suppressed." Def.'s Objs. at 31-32. The Court agrees with the Magistrate Judge that, if the government had seized Defendant's electronic devices unlawfully, it would be unable to rely on the good faith doctrine of United States v. Leon, 468 U.S. 897, 925 (1984), to claim that the search of those items was lawful. See United States v. McGough, 412 F.3d 1232,

1239 (11th Cir. 2005). However, as discussed, the Court has found that law enforcement had a reasonable suspicion justifying the seizure and search of Defendant's electronic devices and, therefore, the subsequently obtained evidence was not tainted by an illegal search. Defendant's objection is **OVERRULED**.

IV. **CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED** that Defendant's Objections to the R&R [Doc. 51] are **OVERRULED**. The Court **APPROVES AND ADOPTS** the R&R [Doc. 45] as the Opinion and Order of this Court. Defendant's Motion to Suppress Search and Seizure of Device(s) [Doc. 22], Defendant's Motion to Suppress Search of Defendant's Residence with a Warrant [Doc. 23], and Defendant's Motion to Suppress Statements and the Fruits thereof [Doc. 24] are **DENIED**.

**IT IS SO ORDERED** this 11th day of March, 2016.

_____
MARK H. COHEN
United States District Judge